# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

David Eastling and EFP, LLC,                    Civil No. 07-3691 (DWF/AJB)
a Minnesota Limited Liability Company,

          Plaintiffs,

v.                                              **MEMORANDUM**
                                                **OPINION AND ORDER**
BP Products North America, Inc.,
a Maryland Corporation,

          Defendant.

_____

Randy V. Thompson, Esq., Nolan, McGregor, Thompson & Leighton, counsel for
Plaintiffs.

Mark L. Johnson, Esq., and Sarah L. Brew, Esq., Greene Espel, PLLP, counsel for
Defendant.

_____

## INTRODUCTION

This matter is before the Court on cross-motions for summary judgment brought

by Plaintiffs David Eastling ("Eastling") and EFP, LLC ("EFP," and together

"Plaintiffs") and by Defendant BP Products North America, Inc. ("BP").  For the reasons

set forth below, Plaintiffs' motion is denied and BP's motion is granted.

## BACKGROUND

Eastling is the owner of a BP-branded gas station located at 600 Boone Avenue

North in Golden Valley, Minnesota.  Eastling owns or controls EFP, which is a limited

liability company that owns the real estate at 600 Boone Avenue North.  In November

2003, EFP entered into a Real Estate Contract with BP to purchase the property at 600

Boone Avenue.  (Compl. Ex. 1.)  Under the Real Estate Contract, BP agreed to sell EFP

the property subject, among other things, to certain covenants and agreements identified

as the "Restrictive Covenants."  (*Id.*)  Attachment #2 to the Real Estate Contract contains

one of these covenants in a section titled "Petroleum Restriction," which states:

> No part of the Property shall be used by Grantee [EFP] or any other
> Grantee Party for an automobile service station, petroleum station, gasoline
> station, convenience store, quick-lube facility, or automobile repair shop, or
> for the purpose of conducting or carrying on the business of selling,
> offering for sale, storage, handling, distributing or dealing in petroleum,
> gasoline, diesel fuel, kerosene, benzol, naphtha, greases, lubricating oils,
> any fuel used for internal combustion engines, lubricants in any form,
> automobile parts or accessories, tires, batteries, or other petroleum or
> petroleum-related products, except for the personal use or consumption of
> such products by Grantee or other occupants of the Property.  For purposes
> of this restriction, the term "convenience store" shall mean any retail
> business with its primary emphasis on providing the public with a
> convenient location to quickly purchase a wide array of consumable
> products (predominantly food or food and gasoline) and services.
>
> The above covenants and use restrictions bind and restrict the Property as
> covenants and restrictions running with the land and are deemed to benefit
> Grantor as an owner or lessee of lands in Hennepin County, Minnesota, or
> as the operator of retail operations in such County.  These restrictive
> covenants will remain in full force and effect for a term of approximately
> ten (10) years commencing on the Closing Date and terminating on the
> tenth (10th) anniversary of the Completion Date[1] whereupon these
> restrictive covenants will automatically lapse and terminate and be of no
> further force or effect.

(*Id.*)

Paragraph 12 of the Real Estate Contract declares that:

---

[1]     The "Completion Date" is the date that the property opened for business as a
newly constructed BP gas and convenience store.  (Compl. Ex. 1.)

Purchaser expressly acknowledges and agrees that Seller has entered into this Contract only upon the express understanding that the Property shall (for 10 years, or shorter period if Amoco/BP and its successors and assigns cease to serve the area in which the Property is located), continue to be used following closing as an Amoco/BP (or its successors or assigns)-branded retail gasoline station supplied by Amoco/BP (or its successors or assigns) directly or through an Amoco/BP (or is successors or assigns)-branded jobber.  Therefore, Seller hereby agrees that the petroleum use restriction set forth in Attachment #2 shall not be enforced by Seller against Purchaser or subsequent owner's [sic] of the Property, and Seller agrees to waive the same, so long as the gasoline station located on the Property continues to be an Amoco/BP (or its successors or assigns)-branded station supplied by Amoco/BP (or its successors or assigns) directly or through an Amoco/BP (or its successors or assigns)-branded jobber.

(*Id.*)  Paragraph 12 further provides that "[i]f Amoco/BP (or its successors and assigns) cease serving the area within which the Property is located, then Amoco/BP (or its successors or assigns) shall execute a recordable release to remove the petroleum use restriction from the Property." (*Id.*)

In addition, Eastling entered into a Dealer Supply Agreement ("DSA") with BP in April 2004.  The DSA provides that BP will supply the station with petroleum for a period of ten years beginning December 6, 2004.  The DSA contains an early termination option permitting Eastling to terminate the DSA by giving BP ninety days written notice, paying all financial obligations then accrued, and paying liquidated damages.  The liquidated damages amount was to be $50,000 if Eastling cancelled during the first year of the contract, $40,000 if he cancelled during the second year, and $30,000 if he cancelled at any time after that.

In this action, Plaintiffs contend that the Petroleum Restriction is unenforceable and seek a declaratory judgment terminating it.  Plaintiffs also request that the Court

declare that the restriction does not run with the land such that it would bind future purchasers of the station.  BP, on the other hand, contends that the Petroleum Restriction is a valid and enforceable restrictive covenant.  BP also argues that the question whether the restriction runs with the land is not ripe and urges the Court not to reach this issue.

## DISCUSSION

### I.      Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts

showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     The Enforceability of the Petroleum Restriction

A restrictive covenant is a servitude or negative easement. *Andrews v. Benson*, 476 N.W.2d 194, 196 (Minn. Ct. App. 1991). Covenants imposing restrictions upon the use of property will not be enlarged by construction, but they are given the full force and effect intended by the parties who created them, and where the language used is clear and unambiguous courts will give the language its obvious meaning. *Klapproth v. Grininger*, 203 N.W. 418, 419 (Minn. 1925).

Plaintiffs indicate that when BP entered into the Petroleum Restriction, it did so as an owner or lessee of property or as an operator of gas stations in this market. Plaintiffs contend that the Petroleum Restriction was designed to benefit BP in that status as BP expanded its market share in the Twin Cities by building large-scale, company-owned and operated gas station-convenience stores in a store model called BP Connect. Plaintiffs argue that when BP sold its interests in stations in the Twin Cities' market during a decapitalization and moved away from the BP Connect model, BP no longer had the status identified in the Petroleum Restriction. Plaintiffs contend that BP terminated the express benefit of the Petroleum Restriction by decapitalizing and, therefore, the Petroleum Restriction can no longer be enforced.

BP argues that, read literally, the Petroleum Restriction forbids the use of the property as any kind of gas station or convenience store, but that under the Real Estate Contract the Petroleum Restriction is not enforced so long as the property remains a

BP-branded gas station.  BP contends that the purpose of the Petroleum Restriction was to ensure that the station at 600 Boone Avenue North remains a BP station for ten years. BP notes that the Petroleum Restriction and Real Estate Contract expressly state the condition under which the Petroleum Restriction lapses:  if BP no longer supplies petroleum to the market either itself or through jobbers.[2]  BP contends that so long as it supplies the market, it has an interest in the property remaining a BP station, fulfilling the purpose of the Petroleum Restriction.

BP further contends that Plaintiffs were aware it had abandoned plans to open company-owned and operated BP Connect stations at the time they purchased the station and real estate at 600 Boone Avenue North and agreed to be bound by the Petroleum Restriction.  BP also claims that it remains a lessee of property in the Twin Cities market. BP indicates that it assigned its rights in all leases in Hennepin County to third parties, but, in the event of a default by an assignee, BP may be required to fulfill the assignee's obligations under the lease.  BP contends that it is currently a lessee of one such property in the Twin Cities due to a reversion of the interest from the assignee to BP.

The Court concludes that the language of the Real Estate Contract and Attachment #2 is clear and unambiguous and that, at the time the parties entered into this transaction, they intended that the property at 600 Boone Avenue North would carry a restrictive covenant that it could only be operated as a BP-branded station for ten years, so long as

---

[2]     The parties agree that BP has not ceased supplying petroleum to the Twin Cities market.

the property was operated as a gas station and BP supplied petroleum products in the

area. Eastling's deposition testimony indicates he understood this to be true.

> Q.     [Y]ou've understood that this provision required you to continue to operate the station for ten years as a BP-branded station as long as you continued to sell gasoline?
>
> A.     Yes.
>
> Q.     You had that general understanding when you signed the contract?
>
> A.     Yes.
>
> …
>
> Q.     And you understand that the petroleum restriction is a covenant on real estate, the real property that limits its use to the sale of gasoline brand, that is BP-branded so long as it is operated as a gasoline station for ten years?
>
> Eastling's Attorney: I'm going to object to this in it calls for a legal conclusion, but you can answer to the best of your knowledge as a layperson.[3]
>
> A.     Yes.

(Doc. No. 22 ¶ 2 at Ex. A, pp. 112-114.)

The essence of Plaintiffs' argument, however, is that the circumstances have so

changed since the parties entered into their agreement, because of BP's decapitalization,

that the Petroleum Restriction no longer serves its original purpose. Minnesota courts

have considered whether a change in circumstances invalidates a restrictive covenant in

the context of residential real estate covenants. In *Burger v. City of St. Paul*, the

---

[3]     The relevant inquiry here was to determine Eastling's understanding of the transaction, and the Court views this evidence in that context without deciding whether Eastling was qualified to make a statement as to the legal issues in the case.

Minnesota Supreme Court stated that, "[c]onditions change from time to time and
therefore no hard-and-fast rule can be laid down as to when change in condition will
defeat the purpose of the restrictions.  It is generally held that the changes must be of
such impact as practically to destroy the essential objects and purposes of the restrictive
use. . . ."  64 N.W.2d 73, 81 (Minn. 1954).

The Restatement (Third) of Property:  Servitudes also addresses the test used to
determine whether changed circumstances justify termination of a restrictive covenant,
stating that:

> When a change has taken place since the creation of a servitude that makes
> it impossible as a practical matter to accomplish the purpose for which the
> servitude was created, a court may modify the servitude to permit the
> purpose to be accomplished.  If modification is not practicable, or would
> not be effective, a court may terminate the servitude.

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10(1) (2000).  The
comments to this section further explain that:

> Because servitudes create property interests that are generally valuable,
> courts apply the changed-conditions doctrine with caution. Of the many
> changed-conditions cases that have produced appellate decisions, few result
> in modification or termination of a servitude.  The test is stringent:  relief is
> granted only if the purpose of the servitude can no longer be accomplished.
> When servitudes are terminated under this rule, it is ordinarily clear that the
> continuance of the servitude would serve no useful purpose and would
> create unnecessary harm to the owner of the servient estate.

*Id*. at § 7.10(1) cmt. a.

In *Double Diamond Props., LLC v. Amoco Oil Co.*, the court applied an essentially
identical standard to that of Minnesota under Virginia law in a dispute regarding a
restrictive covenant on a gas station property which prevented the sale of gasoline on the

property unless the gasoline was supplied by BP.  487 F. Supp. 2d 737, 740-741 (E.D. Va. 2007).  The court stated that "a court may invalidate a restrictive covenant if the conditions surrounding the property change to so great a degree as to destroy the covenant's purpose."  *Id*. at 746.  The court then indicated that while there is no "hard and fast rule" as to the amount of change necessary to defeat the purpose of the restriction, the changes must be "so radical as practically to destroy the essential objects and purposes of the agreement."  *Id*.  The court concluded that the purpose of the restrictive covenant in that case was to benefit BP as a refiner and ultimate supplier of its branded gasoline and that the restrictive covenant continued to benefit BP.  *Id*.  On appeal, the Fourth Circuit affirmed the district court's decision.  *Double Diamond Props., LLC v. BP Prods. N. America, Inc.*, 277 Fed. Appx. 312 (4th Cir. 2008).

Plaintiffs argue that *Double Diamond* is distinguishable from this case because the restrictive covenant there stated that it was "deemed to benefit [BP] as an owner or lessee of lands in the City of Portsmouth, Virginia metropolitan area or as the operator or supplier of retail operations" in that area.  *Double Diamond*, 487 F. Supp. 2d at 741. Plaintiffs note that the Petroleum Restriction does not similarly indicate that it is deemed to benefit BP as a supplier of gasoline.

Plaintiffs' reading of the Petroleum Restriction's language is simply too narrow. The Petroleum Restriction and the negative covenant in *Double Diamond* identify the party benefitted by the negative easement, but are not an exclusive statement of the scope of the benefit conferred.  The Petroleum Restriction does not benefit BP *solely* so long as it owns or leases land or operates retail facilities, nor is the benefit of this provision to BP

contingent on such a status.  Instead, the Petroleum Restriction has a broader purpose clear from its language:  to ensure that so long as BP supplies gasoline products to this area, and so long as the property is operated as a gas station, the property will be a BP-branded station.  Further, BP's decapitalization of its property ownership interests in the Twin Cities market does not so radically alter the circumstances such that the essential purpose of the Petroleum Restriction has been destroyed.  BP still supplies the Twin Cities market with gasoline and benefits from the Boone Avenue station's status as a BP-branded station.

In addition, the Petroleum Restriction itself contemplates a situation in which changed circumstances would void the covenant.  The Petroleum Restriction provides that it terminates if BP no longer supplies petroleum products to this market.  Unlike the circumstances presented in this case, this would be a condition under which the essential purpose of ensuring that the station was a BP-branded station would no longer be served by the restrictive covenant.  The parties did not similarly list BP's divestment of its interests in real property or termination of company-owned and operated gas stations as a condition under which the covenant would terminate.

The Court, therefore, determines that the Petroleum Restriction is a valid restrictive covenant on the property at 600 Boone Avenue North.  This covenant continues to bind the Plaintiffs.

## III.    Whether the Petroleum Restriction Runs with the Land

Plaintiffs request that the Court determine whether the Petroleum Restriction runs with the land such that it would bind future purchasers of the property.  BP, on the other

hand, urges this Court not to consider this question, arguing that the controversy is not
ripe for adjudication.

### A.    Ripeness of the Issue

Eastling contends that he would like to sell the property at 600 Boone Avenue
North as part of a wind-down to his retirement, but he believes that the Petroleum
Restriction will deter potential buyers from making offers for the property or that the
property's value will be depressed.  BP disputes that Eastling intends to sell the property.
BP notes that in Eastling's deposition he was asked what he would do with the property if
the Petroleum Restriction were removed, and specifically "would you continue to operate
[the property] as a station or would you do something else?"  (Doc. No. 22, ¶ 2, Ex. A at
82.)  Eastling responded:  "Of course I'd operate it as a station."  (*Id*. ¶ 2, Ex. A at 82.)
Eastling further stated that he would contemplate rebranding the station.  (*Id*. ¶ 2, Ex. A
at 82-83.)

BP also contends Eastling cannot show that he is unable to sell the property so
long as the Petroleum Restriction applies, noting that in any event BP retains a
right-of-first-refusal in the event a purchaser appears to make an offer.  BP, therefore,
argues that this question should not be considered until an offer for the station is in hand.
Eastling counters, however, that his efforts to market the property will be hampered if the
question of whether the covenant runs with the land is unresolved.  He asserts that if this
Court refuses to decide the issue and he receives an offer, he will be required to file suit
again to seek a determination, duplicating his efforts in this suit.

The ripeness doctrine arises from both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration. *Bender v. Educ. Credit Mgmt. Corp.,* 368 F.3d 846, 847-48 (8th Cir. 2004). Article III limits courts to deciding actual "Cases" and "Controversies," U.S. Const. art. III, § 2, and prohibits them from issuing advisory opinions, *Bender,* 368 F.3d at 847-48. Courts also avoid resolving disputes based on hypothetical facts because doing so would be a poor use of scarce judicial resources. *Bender,* 363 F.3d at 848.

The ripeness doctrine applies to declaratory judgment actions. *Pub. Water Supply Dist. No. 10 v. City of Peculiar,* 345 F.3d 570, 572 (8th Cir. 2003). A declaratory judgment action can be sustained if no injury has yet occurred. *County of Mille Lacs v. Benjamin,* 361 F.3d 460, 464 (8th Cir. 2004). But before a claim is ripe for adjudication the plaintiff must face an injury that is "certainly impending." *Penn. v. W. Va.,* 262 U.S. 553, 593 (1923); *S. Dakota Mining Ass'n, Inc. v. Lawrence County,* 155 F.3d 1005, 1008 (8th Cir. 1998). Whether the factual basis of a declaratory judgment action is hypothetical, for purposes of the ripeness doctrine, is a question of degree. *Neb. Pub. Power Dist. v. MidAm. Energy Co.,* 234 F.3d 1032, 1037-1038 (8th Cir. 2000).

The Court concludes that, while the evidence in the record supporting Plaintiffs' position is not overwhelming, there is sufficient evidence to take this question outside the realm of the hypothetical. In addition, the Court determines that the interests of judicial economy are best served by addressing the restrictive covenant's applicability to future purchasers now in order to avoid duplicative litigation.

### B.       The Petroleum Restriction

Minnesota courts have applied the "touch or concern" standard to determine

whether a restrictive covenant runs with the land.  *See Pelser v. Gingold*, 8 N.W.2d 36,

39 (Minn. 1943) ("A covenant is said to run with the land when it touches or concerns the

land granted or demised"); *see also* RESTATEMENT (THIRD) OF PROPERTY:

SERVITUDES § 3.1 cmt. a (2000) (discussing the history and development of the "touch

or concern" standard).    The parties must also intend that the covenant run with the land

and bind successors in the property.  *Matter of Turners Crossroad Dev. Co.*, 277 N.W.2d

364, 369 (Minn. 1979).

Here, the Petroleum Restriction clearly touches or concerns the land to which it

attaches; the covenant expressly limits the use of the land as a gas station property and,

therefore, "concerns the occupation or enjoyment of the land."  *See id*.  Further, the

Petroleum Restriction itself states that "[t]he above covenants and use restrictions bind

and restrict the Property as covenants and restrictions *running with the land*. . . ."

(Compl. Ex. 1) (emphasis added).  This is persuasive evidence that the parties intended to

burden the property with a negative easement that would run with the land and thereby

bind successors.

Plaintiffs, however, contend that under the reasoning used in *Turners Crossroad*

the Petroleum Restriction no longer runs with the land because BP severed the benefit of

the restrictive covenant.  In *Turners Crossroad*, a negative easement was imposed upon

one parcel of property in order to benefit a second parcel.  277 N.W.2d at 367.  The

owner of the benefitted parcel subsequently sold the parcel, but attempted to retain the

benefit of the restrictive covenant for himself.  *Id*.  The court held that the reservation of the covenant's benefit severed the covenant from the burdened property so that it no longer ran with the land.  *Id*. at 372.

The Court does not find *Turners Crossroad* analogous to this case.  Here, the benefit of the Petroleum Restriction does not flow to a second parcel of land, but to BP. BP did not sever the Petroleum Restriction from the property at 600 Boone Avenue North when it decapitalized; the purpose of the covenant still benefits BP as it remains a gasoline supplier in this market.

The Court concludes that the parties intended that the Petroleum Restriction run with the land and that it remains attached to the burdened property.  The covenant will, therefore, bind successive owners of the property until it expires in 2014.  Plaintiffs' concern that this may result in a reduction in the value of the station does not alter this result.  The Restatement (Third) Property:  Servitudes provides that an "otherwise valid servitude is valid even if it indirectly restrains alienation by limiting the use that can be made of property, by reducing the amount realizable by the owner on sale or other transfer of the property, or by otherwise reducing the value of the property." RESTATEMENT (THIRD) OF PROPERTY:  SERVITUDES § 3.5(1) (2000).  The comments further provide that "the fact that the servitude results in some diminution in return to the owner, or some reduction in the potential market for the property, is not sufficient justification for refusing to give effect to the intent of the parties to create the servitude."  *Id*. § 3.5(1) cmt. a.

## CONCLUSION

The Petroleum Restriction is a valid and enforceable restrictive covenant upon the Plaintiffs' gas station and real estate.  The covenant runs with the land and binds successive owners of the property.  Therefore, BP's summary judgment motion is granted and Plaintiffs' motion for summary judgment is denied.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      The Motion for Summary Judgment (Doc. No. 17) of Defendant BP Products North America, Inc., is **GRANTED**.

2.      The Motion for Summary Judgment (Doc. No. 53) of Plaintiffs David Eastling and EFP, LLC, is **DENIED**.

3.      This matter is **DISMISSED WITH PREJUDICE** in its entirety.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  October 7, 2008                      s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             Judge of United States District Court